MARION F. EDWARDS, Judge.
 

 12Pefendant/appellant, Markus Lanieux (“Lanieux”), was convicted of aggravated flight from an officer in violation of LSA-R.S. 14:108.1(C). That conviction is the subject of a companion appeal.
 
 [1]
 
 The present appeal involves Lanieux’s adjudication as a third felony offender. Lanieux argues that the State offered insufficient proof that his previous convictions could be used for enhancement purposes. Specifically, he asserts that the State did not prove that he was advised of the mandatory minimum and maximum penalties for his previous convictions before the courts accepted his guilty pleas, nor was there any evidence that he was advised of the nature of the charges or the elements necessary for the convictions as mandated by La. C.Cr.P. art. 556.1.
 

 At the multiple bill hearing on July 10, 2009, Chad Pitfield, a latent fingerprint expert, testified that he compared Lan-ieux’s fingerprints from State’s Exhibit 1 (the fingerprint card obtained from Lan-ieux that day) to the fingerprints from State’s Exhibit 2 (documents from case number 387-782, which included the bill of information, the guilty plea form, and the docket master). Mr. Pitfield testified that the fingerprints contained in State’s Exhibit 2 lacked sufficient quality pfor comparison. Therefore, Mr. Pitfield compared
 
 *982
 
 Lanieux’s fingerprints from State’s Exhibit 1 to the fingerprints from State’s Exhibit 3 (the arrest register from the New Orleans Criminal Sheriff, case number 387-782) and determined that they matched. Mr. Pitfield also compared Lanieux’s fingerprints from State’s Exhibit 1 to the fingerprints from State’s Exhibit 4 (documents from case number 97-4179, which included the bill of information, the guilty plea form, and a minute entry dated July 21, 1997), and he determined that they matched.
 

 After Mr. Pitfield concluded his testimony, the prosecutor argued that he had proven beyond a reasonable doubt that Lanieux’s fingerprints in State’s Exhibit 1 matched those contained in the documents of his two prior convictions. He noted that the documents from State’s Exhibit 2 were heavily damaged by Hurricane Katrina, so the fingerprints in State’s Exhibit 1 were compared to an Orleans Parish arrest register, State’s Exhibit 3. The prosecutor informed the trial judge that the arrest register was not from the arrest in case number 387-782, but it was from a July 24, 1997 arrest on a “capias notification” in that case. The prosecutor argued that both State’s Exhibits 2 and 4 contained Boykin
 
 [2]
 
 forms that met the requirements of
 
 Boykin
 
 and Shelton.
 
 [3]
 

 In asking the court to discount the Orleans Parish offense, defense counsel responded that State’s Exhibit 2 was illegible. He argued that the fact Lanieux was arrested on a “capias” out of Orleans Parish did not suffice to prove that he was properly Boykinized. Counsel also argued that there was insufficient evidence to show that Lanieux was advised of the consequences that he could be multiple billed in the future or of the sentencing range, noting there was no transcript, and urging that the general minute entry did not suffice to show that Lanieux was adequately Boykinized as to the other rights.
 

 14As to State’s Exhibit 4, defense counsel argued that, again, there was no transcript to show that Lanieux was properly Boyk-inized, but only a general minute entry. He contended that a defendant must be advised during a colloquy that the conviction could be used to enhance a future sentence and of the sentencing range.
 

 The trial judge found that, considering the weight and the totality of the evidence, Lanieux was the same individual as the defendant in State’s Exhibits 2, 3, and 4, and determined him to be a third felony offender. The trial judge stated that the docket master in case number 387-782 in State’s Exhibit 2 showed that Lanieux was arrested on July 24, 1997, which was the same date of arrest on the arrest register in State’s Exhibit 3, and that contained case number 387-782. He indicated that he had examined the guilty plea form (in State’s Exhibit 2) and found it to contain all of the core rights under the progeny of
 
 Shelton,
 
 and that it was a valid
 
 Boykin.
 
 The court also found that, in case number 97-4179 (State’s Exhibit 4), Lanieux was represented by counsel, the plea was accepted as knowing, intelligent, free, and it was voluntarily made and contained all of the core rights under
 
 Shelton
 
 and its progeny.
 

 To prove a defendant is a habitual offender, the State must initially prove the prior felony convictions and that defendant is the same person who was convicted of the prior felonies.
 
 [4]
 
 The latter
 
 *983
 
 can be established by expert testimony matching the accused’s fingerprints with those in the record from the prior proceedings.
 
 [5]
 
 When the State relies on a prior conviction that is based on a guilty plea in proving defendant’s multiple offender status and defendant denies the multiple bill’s | ¡^allegations, the State bears the burden of proving the existence of the prior guilty plea and that the defendant was represented by counsel when it was taken.
 
 [6]
 

 After the State meets this burden, the defendant must produce affirmative evidence of an infringement of his rights or of a procedural irregularity. If defendant meets this burden, the burden shifts back to the State to prove the constitutionality of the plea, that is, that the plea was knowing and voluntary.
 
 [7]
 
 This final burden can be met if the State produces a “perfect transcript” articulating the
 
 Boy-kin
 
 colloquy between the defendant and the trial judge or any combination of a guilty plea form, a minute entry, or an “imperfect” transcript.
 
 [8]
 
 If anything less than a “perfect” transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary and made with an articulated waiver of the three
 
 Boykin
 
 rights.
 
 [9]
 

 In the present case, Lanieux argues that the link tying him to the Orleans Parish conviction was speculative and did not establish the requisite proof for enhancement purposes. A review of the docket master in State’s Exhibit 2 confirms the trial judge’s findings, i.e., that an attachment was out for Lanieux’s arrest, and that the date of arrest in the docket master (7/24/97) matches the date of arrest on the arrest register, which itself contains case number 387-782. Although this is not the typical method of linking fingerprints on an arrest register with fingerprints on a bill of information, we find that the weight and the totality of the evidence showed that Lanieux was the same individual as the one in State’s Exhibits 2 and 3. This Court has previously found sufficient linkage where the State connects the fingerprint card to the arrest register and/or the bill of | (¡information by matching police item numbers, Bureau of Identification numbers, social security numbers, addresses, employers, or docket numbers.
 
 [10]
 

 Lanieux’s identity was established at the multiple bill hearing by a fingerprint expert. The State’s exhibits showed that Lanieux was represented by counsel at both prior pleas. Lanieux then had the burden to prove by affirmative evidence an infringement of his rights or of a procedural irregularity. On appeal, Lanieux argues that the evidence offered by the State was insufficient to prove that he was advised of his sentencing exposure for each offense or of the nature of the charges or the elements of each offense.
 

 
 *984
 
 La.C.Cr.P. art. 556.1 requires the trial court to advise the defendant of his sentencing exposure and the nature of the charge to which the plea is offered prior to accepting a guilty plea. However, that article did not become effective until August 15,1997 and, therefore, was not applicable when Lanieux entered his guilty plea on July 21, 1997, before the effective date of the statute. Furthermore, the Louisiana Supreme Court has held that advice with respect to the defendant’s sentencing exposure may facilitate the taking of a voluntary guilty plea, but it has never
 
 formed
 
 part of the core
 
 Boykin
 
 requirements for the entry of a presumptively valid guilty plea.
 
 [11]
 
 Therefore, at the time of the 1997 plea, there was no statutory or jurisprudential requirement to inform Lanieux of the sentencing exposure for that crime.
 
 [12]
 

 The other guilty plea was entered on July 1, 1998, after the effective date of the article. The waiver of rights form in State’s Exhibit 2 shows that Lanieux was advised in connection with that plea that he could possibly receive a sentence of 17five to thirty years and a fine of $50,000. Additionally, the waiver of rights form shows that he initialed next to the statement that he was informed of and understood the charge to which he was pleading guilty. Therefore, contrary to his assertions, he was advised of the sentencing range and the nature of the charge in connection with the July 1, 1998 guilty plea.
 

 Lanieux failed to present affirmative evidence of any infringement on his rights or procedural irregularity in the taking of his predicate pleas and, therefore, the burden never shifted to the State to prove the constitutionality of the predicate pleas. Consequently, the trial court did not err in adjudicating Lanieux a third felony offender. This assignment of error is without merit.
 

 We have reviewed the record for errors patent, and note the following: La. R.S. 15:529.1 requires the trial court to advise a defendant of the allegations contained in the information, his right to a hearing, and his right to remain silent.
 
 [13]
 
 In the instant case, the record does not disclose that Lanieux was advised of his rights prior to the multiple bill hearing. The failure of the trial court to advise a defendant of his right to a trial and to remain silent is harmless error when the multiple offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant.
 
 [14]
 
 Here, Lanieux denied the allegations of the multiple bill, and the State presented competent evidence at the hearing to establish his multiple offender status. Therefore, the trial court’s failure to advise him of the specific allegations against him and of his right to be tried and to remain silent was harmless error.
 

 For the foregoing reasons, we affirm the multiple offender adjudication.
 

 AFFIRMED.
 

 [1]
 

 .
 
 State v. Lanieux,
 
 No. 09-CA-675.
 

 [2]
 

 .
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
 

 [3]
 

 .
 
 State v. Shelton,
 
 621 So.2d 769, 779-80 (La.1993).
 

 [4]
 

 .State v. Mims,
 
 00-1507 (La.App. 5 Cir. 12/26/01), 806 So.2d 760, 766,
 
 writ denied,
 
 02-0466 (La.2/7/03), 836 So.2d 88.
 

 [5]
 

 .
 
 State v. Kelly,
 
 01-321 (La.App. 5 Cir. 10/17/01), 800 So.2d 978, 984,
 
 writ denied,
 
 01-3266 (La. 11/1/02), 828 So.2d 565.
 

 [6]
 

 .
 
 State v. Shelton,
 
 621 So.2d at 779-80.
 

 [7]
 

 .
 
 Id.
 

 [8]
 

 .
 
 State v. Collins,
 
 04-255 (La.App. 5 Cir. 10/12/04), 886 So.2d 1149.
 

 [9]
 

 .
 
 Id.
 

 [10]
 

 .
 
 See, State v. Thomas,
 
 06-654 (La.App. 5 Cir. 1/16/07), 951 So.2d 372,
 
 writ denied, 07-
 
 0464 (La. 11/21/07), 967 So.2d 1153 (citing
 
 State v. Muhammad,
 
 03-419 (La.App. 5 Cir. 6/29/04), 880 So.2d 29,
 
 writ denied,
 
 04-2082 (La. 1/7/05), 891 So.2d 669).
 

 [11]
 

 .
 
 State v. Anderson,
 
 98-2977 (La.3/19/99), 732 So.2d 517.
 

 [12]
 

 .
 
 State v. Rodrigue,
 
 01-377(La. App. 5 Cir. 8/28/01), 795 So.2d 488.
 

 [13]
 

 .
 
 State v. Haywood,
 
 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568.
 

 [14]
 

 .
 
 Id.